No. 103,083

STATE OF KANSAS, *Appellee*, v. MATTHEW ASTORGA, *Appellant*.

(284 P.3d 279)

Opinion filed August 31, 2012.

*Joanna Labastida*, of Kansas Appellate Defender Office, argued the cause, and *Theresa L. Barr*, of the same office, was on the brief for appellant.

*John Bryant*, deputy county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Matthew Astorga appeals his conviction of premeditated first-degree murder, claiming the district court violated his right to present his theory of defense and his right to a trial by an impartial jury. Astorga also challenges the constitutionality of K.S.A. 21-3214(a), which limits a defendant's ability to assert the justification of self-defense in some cases.

Additionally, Astorga asserts several challenges to his hard 50 sentence, including that the sentencing court erred in (1) finding the existence of several aggravating factors; (2) failing to properly weigh and consider mitigating circumstances; and (3) imposing aggravated presumptive sentences without requiring proof of aggravating factors to a jury beyond a reasonable doubt. Finally, Astorga challenges the constitutionality of the hard 50 sentencing scheme and claims he is entitled to resentencing under the identical offense doctrine. We affirm Astorga's convictions and sentence but dismiss his challenge to his aggravated presumptive sentence.

## Factual and Procedural Background

On December 26, 2008, Matthew Astorga drove to the home of Ruben Rodriguez, shot and killed Rodriguez, and drove away. Astorga was arrested after a brief police pursuit. Astorga ultimately pleaded guilty to criminal possession of a firearm and fleeing or attempting to elude a police officer, and he was convicted by a jury of first-degree premeditated murder. We have briefly summarized the trial testimony below. Additional facts are discussed as relevant to our discussion of the issues.

Rodriguez' girlfriend, Keira Moritz, testified that just before Rodriguez was shot, he was standing in the kitchen of his home and talking on the phone. Moritz' 2-year-old child and Ryan Fowler were also present in the home. Moritz testified she heard Rodriguez' truck alarm going off so she handed Rodriguez his keys, and he went to the door to go out and turn off the alarm. Moritz stood near Rodriguez as he stood in the doorway. She heard a few words and then heard Rodriguez say, " 'I don't play like this.' " Moritz looked outside and saw Astorga, whom she recognized from prior meetings, standing outside the house.

At some point, Moritz saw that Astorga had a gun in his hand. She testified she did not see Astorga fire the gun, but she believed she heard two gunshots. After the first shot, she begged Astorga not to shoot because her baby was inside. Moritz tried to protect her child, who stood behind her, by pushing the child under a futon couch. Moritz testified she believed Rodriguez fell after the second shot was fired. After Rodriguez was shot, Moritz and Fowler applied pressure to Rodriguez' wound until the police arrived.

Kenneth Nichols, who lived across the street from Rodriguez, testified he was at home watching television in his living room and looking out his front door when he saw a black truck he did not recognize park across the street. Nichols testified that "a short stocky guy" got out of the truck and walked into Rodriguez' yard. Nichols left his front door but returned after hearing what he described as "a gun going off." Nichols saw the man return to the black truck with a pistol in his left hand, get back into the truck, and drive off. Nichols identified Astorga at trial as the man he saw on the night of the shooting.

Stephanie Wharton, a neighbor one house away from Rodriguez' home, and her sister, Tracey Wharton, had just arrived at Stephanie's home when Tracey heard a car alarm. Tracey testified she looked out the window and saw a man leaning up against the hood of a white truck parked in the street and looking toward Rodriguez' home. The man then pulled out a gun and walked toward Rodriguez' home. At that point, Tracey went to the phone to call 911. Before she could press "send," she heard a single gunshot. Tracey yelled at Stephanie to come to the front door. As Tracey spoke to the dispatch operator, she saw a black truck speed away.

Stephanie Wharton testified she was in the restroom and did not hear the car alarm or the gunshot. But she did hear Tracey say, " 'Oh my God, there's a gun. Where's your phone? Where's your phone?' " Before her sister had hung up the phone after calling 911, Stephanie ran towards Rodriguez' house, where she could hear Moritz and a child crying. As Stephanie walked inside the home, she saw Rodriguez lying on the floor and Moritz and Fowler hovering over him trying to render aid. Neither Moritz nor Fowler had a firearm, and Stephanie saw no firearm in the living room. Stephanie and Fowler went outside to flag down police.

Astorga testified in his own defense at trial. He admitted shooting Rodriguez, but his version of the shooting and the events preceding it differed materially from that of other witnesses.

Astorga claimed that for some time before he shot Rodriguez, Rodriguez had been pressuring Astorga to repay a drug debt. On December 22, 2008, Astorga went to visit Charlie Fowler, Ryan Fowler's father. Rodriguez and a man Astorga identified as "Luis" were present at Charlie's apartment. According to Astorga, Rodriguez confronted Astorga about the debt, and Rodriguez and Luis kicked and stabbed Astorga. Astorga admitted that he refused to cooperate with law enforcement's investigation of the stabbing.

Further, Astorga testified that he believed Rodriguez participated in a drive-by shooting of Astorga's home in the early morning hours of December 26, 2008—the day he shot Rodriguez. Astorga claimed that the officer who responded to the shooting refused to investigate. Astorga admitted, however, that he refused to cooperate with the officer's investigation.

Astorga testified that about 4:30 p.m. on December 26, 2008, he traded his dune buggy for a .40 caliber pistol and three magazines containing 45 rounds of ammunition. According to Astorga, in order to ensure that the gun worked, he practiced firing it in his backyard, emptying one magazine of 15 rounds. About 8:30 p.m., Astorga drove to Rodriguez' residence to repay his drug debt, taking the pistol with him for protection. According to Astorga, when he arrived at Rodriguez' home, he parked his truck in front of Rodriguez' truck, got out of his truck, and put his pistol in his waistband. Astorga admitted he set off Rodriguez' truck alarm, although he implied he did so accidentally, saying, "I must have set the alarm off."

Astorga claimed that when he got out of his truck, Rodriguez was already at the door "acting frantic" and holding a pistol. Astorga testified he shot Rodriguez in self-defense only after Rodriguez shot at him first. Astorga then got back in his truck and drove off at a high rate of speed.

Officer Wade Robinson testified he was on patrol when he heard a call about the shooting. As he headed toward Rodriguez' house, Robinson saw a black truck traveling at a high rate of speed, and he began to chase it. Astorga eventually turned off on a side street and became stuck in mud. Robinson arrested Astorga and recovered a .40 caliber Glock, a plastic gun case, and three magazines of bullets from the floorboard of his truck. Robinson testified that one magazine was empty, the second contained 15 bullets, and the third held 14 bullets. According to Robinson, a magazine normally holds 15 bullets.

Further, Officer Robinson testified that 4 days before Rodriguez' shooting, on December 22, 2008, he was called to a local hospital's emergency room to investigate the admission of a stabbing victim. There, Astorga's mother told Robinson that a man named Luis Ayala stabbed her son. She did not mention Rodriguez, and Astorga refused to speak to Robinson about the stabbing.

Officer Lisa Gaspard, who responded to Rodriguez' residence after his shooting, testified that Moritz told her that she had heard only one gunshot and that a bullet went through Rodriguez and into the wall.

Detective Bruce Bradford testified that he located a bullet hole on the north wall of Rodriguez' living room. It appeared the bullet traveled through the living room wall, into a bedroom, and out the bedroom window into the back yard. Bradford testified the bullet hole was consistent with one created by a .40 caliber handgun. Bradford also testified that a search of Rodriguez' home revealed no weapons or evidence associated with weapons, although officers did discover methamphetamine and drug paraphernalia inside the home.

The coroner, Dr. Michael Handler, testified Rodriguez died from a distant range gunshot that entered his abdomen and exited through his back. According to Handler, Rodriguez had puncture wounds on his arm consistent with being an IV drug user and had at least one fairly recent puncture wound.

The State charged Astorga with first-degree murder, felony criminal possession of a firearm, and fleeing or attempting to elude a police officer. He was tried by a jury on all three charges, but before the defense rested Astorga pleaded guilty to criminal possession of a firearm and fleeing or attempting to elude a police officer. The jury found Astorga guilty of first-degree premeditated murder.

The sentencing court denied Astorga's motion for a new trial and imposed a sentence of life imprisonment with no possibility of parole for 50 years and lifetime postrelease supervision for the murder conviction. Further, the court imposed consecutive aggravated presumptive prison sentences for the remaining convictions and ordered that those sentences be served consecutive to the hard 50 sentence. Astorga appeals his murder conviction and sentence.

## DISCUSSION

*The district court's instructions did not violate Astorga's right to present his theory of defense.*

Although the district court gave a self-defense instruction, Astorga claims the district court violated his constitutional right to present his theory of defense when it also instructed the jury, over Astorga's objection, that "[a] person is not permitted to use force

in defense of himself if he is attempting to commit murder, a forcible felony."

Astorga reasons that this forcible felony instruction was "incongruent" with the self-defense instruction and misled the jury, requiring reversal of his murder conviction. The State contends the district court appropriately gave both instructions because there was evidence both that Astorga was committing a forcible felony—murder—and that he shot Rodriguez in self-defense.

We recently set out the progression of analysis and corresponding standards of review to be applied by the appellate court in reviewing a challenge to the giving or failure to give a jury instruction: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

Since Astorga clearly preserved this issue with an objection to the giving of the "use of force" instruction, we must consider whether that instruction was legally appropriate. Astorga contends that under the circumstances of this case, the instruction was legally inappropriate.

"Under the state and federal Constitutions, a defendant is entitled to present his or her theory of defense." *State v. Lawrence*, 281 Kan. 1081, 1085, 135 P.3d 1211 (2006). But the right to present a defense is not absolute. Instead, " 'the right . . . is subject to statutory rules and case law interpretations of the rules of evidence and procedure.' " 281 Kan. at 1085 (quoting *State v. Lackey*, 280 Kan. 190, 216, 120 P.3d 332 [2005]).

Here, Astorga's sole theory at trial was that his use of force was justified as self-defense. Under Kansas law,

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person." K.S.A. 21-3211.

But in some cases the justification of self-defense is unavailable. K.S.A. 21-3214 provides that the justification of self-defense, as set forth in K.S.A. 21-3211,

"is not available to a person who:

"(1) Is attempting to commit, committing, or escaping from the commission of a forcible felony; or

"(2) Initially provokes the use of any force against himself or another, with intent to use such force as an excuse to inflict bodily harm upon the assailant; or

"(3) Otherwise initially provokes the use of any force against himself or another, unless:

(a) He has reasonable ground to believe that he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

(b) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force." K.S.A. 21-3214.

The term "forcible felony" as used in K.S.A. 21-3214(1) is defined as "any treason, murder, voluntary manslaughter, rape, robbery, burglary, arson, kidnapping, aggravated battery, aggravated sodomy and any other felony which involves the use or threat of physical force or violence against any person." K.S.A. 2008 Supp. 21-3110(9).

During the preliminary jury instructions conference, Astorga requested a self-defense instruction. The State did not object, but requested the court give the forcible felony and initial aggressor instructions, PIK Crim. 3d 54.20, 54.21, and 54.22, based on K.S.A.

21-3214(1), (2), and (3), respectively. The State argued PIK Crim. 3d 54.21 should be given because the evidence showed Astorga went to Rodriguez' home either to commit or attempt to commit murder, a forcible felony, as set out in K.S.A. 21-3214(1) and defined in K.S.A. 2008 Supp. 21-3110(9). Further, the State requested that PIK Crim. 3d 54.21 and 54.22 be given because the evidence showed that Astorga provoked the attack and failed to retreat or withdraw from the attack, as described in K.S.A. 21-3214(2) and (3).

The district court gave both the self-defense instruction requested by Astorga and the forcible felony instruction requested by the State, PIK Crim. 3d 54.20, based on K.S.A. 21-3214(1). But Astorga argued it was "incongruent" to give both instructions because the court had already determined he was entitled to a self-defense instruction and the forcible felony instruction applies when self-defense is not available. The court declined the State's request to give the initial aggressor instructions, PIK Crim. 3d 54.21 and 54.22, based on K.S.A. 21-3214(2) and (3), respectively.

Ultimately, the district court advised the jury in Instruction No. 10, which mirrored PIK Crim. 3d 54.17, as follows:

"The Defendant claims his use of force was permitted as self-defense.

"The Defendant is permitted to use deadly force against another person only when and to the extent that it appears to him and he reasonably believes deadly force is necessary to prevent death or great bodily harm to himself from the other person's imminent use of unlawful force. Reasonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief.

"When use of force is permitted as self-defense, there is no requirement to retreat."

In Instruction No. 11, the court advised the jury: "A person is not permitted to use force in defense of himself if he is attempting to commit murder, a forcible felony."

We cannot agree with Astorga's claim on appeal that the forcible felony instruction "effectively nullified" his self-defense instruction. Rather, it appears the district court appropriately gave both instructions under the evidence presented in this case.

For instance, Astorga testified he (1) went to Rodriguez' home to resolve an unpaid debt, (2) took a gun with him for protection, and (3) shot Rodriguez after Rodriguez shot at him first. These facts support giving the self-defense instruction. See K.S.A. 21-3211(a), (b); see also *State v. Anderson*, 287 Kan. 325, 333-34, 197 P.3d 409 (2008) ("affirmative-defense-based instructions can only be given when the evidence is sufficient to justify a rational fact-finder finding in accordance with that defense theory" but, "the evidence of the defendant's theory of defense certainly can be supported only by his or her own testimony").

On the other hand, the State presented evidence that on the day of the murder, Astorga purchased a gun and practiced shooting it, went to Rodriguez' home armed with the gun, intentionally set off Rodriguez' truck alarm, and then shot an unarmed Rodriguez when he came to the door in response to the alarm. These facts support the State's theory that Astorga shot Rodriguez in an attempt to commit murder, a forcible felony. Thus, if the jury found that Astorga was attempting to commit murder when he shot Rodriguez, he was not permitted to use force in defense, and the district court appropriately gave the forcible felony instruction. See K.S.A. 21-3214(1); K.S.A. 2008 Supp. 21-3110(9).

The cases cited by the State support giving both instructions. See *State v. Hunt*, 257 Kan. 388, 391-94, 894 P.2d 178 (1995) (affirming trial court's decision to give self-defense and initial aggressor instructions; reasoning that instructions correctly stated the law, question of whether defendant was initial aggressor was for jury and, if jury found defendant was not initial aggressor, jury could "disregard the limit on the defendant's right to use self-defense"); *State v. Beard*, 220 Kan. 580, 581-82, 552 P.2d 900 (1976) (affirming trial court's decision to give self-defense and initial aggressor instructions; reasoning instructions were correct statements of the law, instructions did not declare defendant to be initial aggressor but instead informed jury of the law related to limits on asserting self-defense, and evidence supported a potential finding that defendant was initial aggressor).

We recognize that neither *Hunt* nor *Beard* involved the forcible felony instruction given in this case. Instead, the jury in both of

those cases received the initial aggressor instructions the court declined to give here. See *Hunt*, 257 Kan. at 392; *Beard*, 220 Kan. at 581. However, like the instructions in *Hunt* and *Beard*, the instructions given in this case correctly stated the law. And just as the initial aggressor instructions given in *Hunt* and *Beard* did not declare the defendant to be the initial aggressor, the forcible felony instruction given in this case did not declare that Astorga was attempting to commit murder when he shot Rodriguez. Instead, it informed the jury that Astorga was not permitted to use force in defense of himself if the jury determined he was attempting to commit murder, a forcible felony. Conversely, if the jury found Astorga was not attempting to commit murder when he shot Rodriguez, the jury was free to disregard the limit on his right to use self-defense. And the State had presented evidence tending to establish that Astorga was attempting to commit murder when he shot Rodriguez.

Under these circumstances, we conclude the district court correctly instructed the jury on the law of self-defense and its unavailability when the defendant is attempting to commit a forcible felony.

*Astorga failed to preserve his challenge to the constitutionality of K.S.A. 21-3214(1).*

Next, Astorga claims the language of K.S.A. 21-3214(1) is vague and, therefore, unconstitutional. Specifically, Astorga argues the language is insufficient to warn individuals of common intelligence that the justification of self-defense is not available to a person who uses deadly force when committing, attempting to commit, or escaping from the commission of a forcible felony. Astorga further argues this court's "historically inconsistent" interpretation of K.S.A. 21-3214(1) demonstrates that "the statute does not adequately guard against arbitrary and discriminatory enforcement."

Preliminarily, the State asserts Astorga failed to raise this issue below. Astorga acknowledges he failed to raise the issue below but notes that "an appellate court may decide to consider such an issue when arising on admitted facts and where resolution of the issue will serve the ends of justice."

The rule that issues not raised before the trial court cannot be raised on appeal applies equally to constitutional grounds for reversal asserted for the first time on appeal. *State v. Leshay*, 289 Kan. 546, 553, 213 P.3d 1071 (2009). Astorga correctly asserts that appellate courts may consider new issues when: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court was right for the wrong reason. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010).

Here, Astorga suggests without explanation that "resolution of the issue will serve the ends of justice." But we conclude the ends of justice have been adequately served by addressing the alleged instructional error raised below, and we decline to review Astorga's challenge to the constitutionality of K.S.A. 21-3214(1) for the first time on appeal.

*The district court did not abuse its discretion by denying Astorga's motion for new trial.*

Next, Astorga argues that in denying his motion for new trial based on juror misconduct, the district court violated his constitutional right to be tried by an impartial jury. See U.S. Const. Amend. VI; Kan. Const. Bill of Rights § 10; *State v. Jenkins*, 269 Kan. 334, 337, 2 P.3d 769 (2000) (criminal defendant has a constitutional right to a public trial by an impartial jury).

When a party or a party's counsel is aware of alleged juror misconduct before the jury renders its verdict and fails to object, the party cannot later assert the alleged misconduct as grounds for a new trial. *State v. Saleem*, 267 Kan. 100, 113, 977 P.2d 921 (1999); *State v. Buggs*, 219 Kan. 203, 207, 547 P.2d 720 (1976). We explained the rationale for this rule in *Buggs*:

"If the alleged misconduct is brought to the court's attention a hearing may be held and the situation remedied, if that is possible. If not, a mistrial may be declared immediately without wasting the time and expense required to complete the trial. The rule is a corollary of the contemporaneous objection rule as to evidence (K.S.A. 60-404; *State v. Estes*, 216 Kan. 382, 532 P.2d 1283 [1975]) and the requirement of an objection to erroneous instructions (K.S.A. 60-251[b]; *Ap-*

*person v. Security State Bank*, 215 Kan. 724, 528 P.2d 1211 [1974]). A party is not permitted to remain silent in the face of known error, gamble on the verdict, and show his hole card only if he loses." *Buggs*, 219 Kan. at 208.

Here, Astorga alleges that juror E.F. failed to advise the court that he knew Astorga and previously had been involved in an altercation with Astorga at the pharmacy where E.F. worked. But Astorga had multiple opportunities to recognize and alert the court to his alleged acquaintance with E.F, including when E.F. was individually questioned during voir dire, and E.F. identified himself as a pharmacist. Astorga also was present in the courtroom throughout the trial, and, on the third day of trial, E.F. individually responded on behalf of the jury to the court's question regarding taking a lunch break.

Under these circumstances, Astorga's failure to timely bring the alleged juror misconduct to the trial court's attention precludes our consideration of this claim.

*The district court did not err in imposing a hard 50 sentence.*

Astorga raises multiple challenges to his hard 50 sentence. First, he claims the district court misapplied K.S.A. 21-4636(b) in finding the existence of an aggravating circumstance alleged by the State. Alternatively, Astorga argues the evidence is insufficient to support the existence of that aggravating circumstance. Further, Astorga contends the sentencing court failed to properly consider mitigating circumstances before imposing his sentence.

If a defendant is convicted of first-degree premeditated murder for a crime committed on and after July 1, 1999, the sentencing court "shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of . . . 50 years or sentenced as otherwise provided by law." K.S.A. 21-4635(b). To make such a determination, the court may be presented evidence concerning any matter relevant to the question of sentence, including matters relating to any of the aggravating circumstances enumerated in K.S.A. 21-4636 and any mitigating circumstances. K.S.A. 21-4635(c). If the court finds that one or more of the aggravating circumstances exist and, further, that mitigating circumstances do

not outweigh such aggravating circumstances, the court shall sentence the defendant to the hard 50 sentence. K.S.A. 21-4635(d).

Here, the district court found two aggravating circumstances. First, the court found Astorga had a prior second-degree murder conviction. See K.S.A. 21-4636(a) (aggravating circumstances include previous conviction of a felony in which defendant inflicted great bodily harm, disfigurement, dismemberment, or death on another). Second, the district court found that Astorga's behavior created a "risk" to others. Ostensibly, the district court found this circumstance to be authorized by K.S.A. 21-4636(b), which permits the court to find an aggravating circumstance when the defendant "knowingly or purposely killed or created a great risk of death to more than one person."

The district court made no findings as to the existence of mitigating circumstances or whether mitigating circumstances outweighed the aggravating circumstances found by the court.

Astorga argues that in finding his conduct placed others at risk, the district court misapplied K.S.A. 21-4636(b) because that statute requires the court to find the defendant created "a great risk" of death to more than one person. Alternatively, Astorga argues even if the court properly applied K.S.A. 21-4636(b), the evidence was insufficient to support the court's finding that by shooting Rodriguez, he knowingly or purposely created a great risk of death to others.

But Astorga fails to challenge the first aggravating circumstance found by the district court, i.e., Astorga's prior second-degree murder conviction. A district court may impose a hard 50 sentence upon finding that "one or more" aggravating circumstances exist and that such circumstances are not outweighed by mitigating circumstances. K.S.A. 21-4635(d).

Because at least one aggravating circumstance enumerated in K.S.A. 21-4636 and found by the district court is undisputed on appeal, we need not determine either whether the district court misapplied K.S.A. 21-4636(b) or whether the evidence was insufficient to support the second aggravating circumstance.

Astorga also argues the district court abused its discretion by failing to weigh mitigating circumstances proffered by Astorga.

While K.S.A. 21-4637 specifies eight potential mitigating circumstances, it does not limit the district court's consideration to those statutory circumstances. *State v. Lopez*, 271 Kan. 119, 140, 22 P.3d 1040 (2001). Absent an abuse of discretion, we will not disturb a district court's decision regarding the existence of mitigating circumstances. *State v. Livingston*, 272 Kan. 853, 858, 35 P.3d 918 (2001). Similarly, we review the district court's weighing of aggravating and mitigating circumstances for an abuse of discretion. *Lopez*, 271 Kan. at 141-42; see *Ward*, 292 Kan. at 550 (stating abuse of discretion standard of review).

Here, Astorga urged the district court to consider two nonstatutory mitigating factors: (1) evidence of Rodriguez' prior acts of violence toward Astorga, and (2) evidence that Astorga acted in self-defense. The sentencing court made no findings on the record regarding the proffered mitigating circumstances, nor did it indicate whether it weighed those mitigating circumstances. However, the sentencing court clearly was aware of both circumstances as Astorga presented evidence of both circumstances at trial before the same judge and argued the circumstances as mitigating circumstances at sentencing.

Under these circumstances, we infer from the absence of findings that the district court found no mitigating circumstances existed and that the aggravating circumstances outweighed the nonexistent mitigating circumstances. See *State v. Coleman*, 271 Kan. 733, 742, 26 P.3d 613 (2001) (inferring that the district court found aggravating circumstances outweighed mitigating circumstances when the district court made no comments regarding mitigating circumstances or whether the court weighed aggravating and mitigating circumstances); *State v. Higgenbotham*, 264 Kan. 593, 612, 957 P.2d 416 (1998) (inferring the absence of any mitigating circumstances when the district court failed to make any findings on the record regarding mitigating circumstances). We do, however, encourage district courts when imposing a hard 50 sentence to make findings on the record regarding the existence or nonexistence of mitigating circumstances and the court's weighing of such circumstances.

*The hard 50 sentencing scheme is constitutional.*

Astorga also contends the hard 50 sentencing scheme is unconstitutional under *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Astorga acknowledges that his position is contrary to our prior case law, but urges us to reconsider our position and raises the issue to preserve it for federal review.

We have consistently upheld the constitutionality of the hard 40/hard 50 sentencing scheme in light of both *Ring* and *Apprendi*, and we decline Astorga's invitation to reconsider our prior decisions See, *e.g.*, *State v. McCaslin*, 291 Kan. 697, 729-30, 245 P.3d 1030 (2011) (citing numerous cases); *State v. Conley*, 270 Kan. 18, 35-36, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001).

*We lack jurisdiction to review Astorga's aggravated presumptive sentences.*

Astorga next asserts the sentencing court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution as interpreted in *Apprendi*, 530 U.S. 466, by imposing aggravated presumptive sentences on two of his convictions without requiring the State to prove aggravating factors to a jury beyond a reasonable doubt. Astorga acknowledges his position is contrary to *State v. Johnson*, 286 Kan. 824, 848-52, 190 P.3d 207 (2008), but he nevertheless raises the issue to preserve it for federal review.

In *Johnson*, we held that a sentencing court's discretion to impose an aggravated presumptive sentence as provided in K.S.A. 21-4704(e)(1) is constitutional under *Apprendi*. 286 Kan. at 851. When a sentencing court exercises its discretion to impose an aggravated presumptive sentence, we lack jurisdiction to review that sentence under K.S.A. 21-4721(c)(1). 286 Kan. at 851-52. Accordingly, we lack jurisdiction to review Astorga's presumptive sentences, and we dismiss that portion of his appeal.

*Astorga is not entitled to resentencing under the identical offense doctrine.*

Finally, Astorga asserts that first-degree premeditated murder

and second-degree murder are identical offenses; therefore, the identical offense doctrine requires that we vacate his sentence and remand to the district court with directions to resentence him in accordance with the lesser penalty applicable to a severity level one person felony.

As the State points out, we rejected this same argument in *State v. Warledo*, 286 Kan. 927, 951, 190 P.3d 937 (2008) (explaining that crimes of first-degree premeditated murder and second-degree intentional murder are not identical because first-degree premeditated murder requires the additional element of premeditation). See also K.S.A. 21-3401(a) and K.S.A. 21-3402(a) (setting forth elements of first-degree and second-degree murder, respectively). Accordingly, Astorga is not entitled to resentencing under the identical offense doctrine.

Affirmed in part and dismissed in part.